## BOHONNON LAW FIRM, LLC *v.* JOHN H. BAXTER
### (AC 32115)

Gruendel, Bear and Mihalakos, Js.

Argued June 2—officially released September 13, 2011

*Kenneth A. Votre*, for the appellant (defendant).

*K. Wynne Bohonnon*, for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant, John H. Baxter, appeals from the judgment of the trial court rendered in favor of the

plaintiff, the Bohonnon Law Firm, LLC, on its complaint against the defendant for, inter alia, breach of contract for legal services. On appeal, the defendant claims that the court improperly: (1) denied his motion to dismiss, (2) denied his motion to open the default, (3) curtailed his defense as to damages, (4) awarded attorney's fees to the plaintiff and (5) failed to protect his right to due process of law. We affirm the judgment of the trial court.

The following facts and very detailed procedural history[1] are relevant to our consideration of the defendant's claims on appeal. After successfully securing an order for prejudgment remedy in the amount of $20,000 against the defendant, the plaintiff directed a marshal of the county of New London to summon the defendant. The plaintiff did not use the standard civil summons, form JD-CV-1. Rather, the plaintiff prepared its own writ of summons, which provided: "By the authority of the state of Connecticut, you are hereby commanded to Attach and Garnish to the value of TWENTY THOU-SAND Dollars ($20,000) in the goods or estate of JOHN H. BAXTER (69 NECK RD., OLD LYME, CONNECTI-CUT) and summon her/him/it/them to Appear before the Superior Court for the New Haven Judicial District at New Haven on or before the 23 day of DECEMBER, 2008,[2] said Appearance to be made by the/each defendant or her/his/its/their attorney, by filing a written

[1] To determine the dates of pleadings, we thoroughly have examined the court file and examined the date stamps on the individual documents. We also have examined the documents included in the appendix supplied by the defendant, which include several orders of the court, which we are unable to find in the actual court file. We note that some of the pleadings also do not appear to have been coded properly into the case detail sheet at the time of filing, if at all. For example, the date stamp on the defendant's motion to open default, #109, is March 26, 2009. On the case detail sheet, however, the filing date is June 26, 2009. Also, the defendant's February 19, 2009 motion to dismiss contains the notation that it is entry # "105" on the actual document, yet the motion is not recorded on the case detail sheet. There is no entry #105 on the sheet.

[2] The court case detail sheet, however, shows the return date as October 24, 2008.

statement of Appearance with the Clerk of said Court on or before the second day following said Return Date, then and there to answer unto BOHONNON LAW FIRM L.L.C, a duly authorized Connecticut limited liability company maintaining a principal place of business in New Haven, Connecticut, in a civil action wherein the plaintiff complains and says . . . ." The plaintiff's three count complaint immediately follows the writ of summons, beginning on the same page. On the third page of the document, the plaintiff sets forth its claims for relief and states: "Of this Writ, with your doings thereon, make due Service and Return. Dated at New Haven, Connecticut, this 5 day of December, 2008." The signature of Joshua H. Brown, Commissioner of the Superior Court, is affixed, and the address and telephone number of his law firm are listed, as is his juris number.[3]

---

[3] Although the plaintiff did not use form JD-CV-1, which is the preprinted civil summons form prepared by the judicial department, the record reveals that the plaintiff's summons substantively complied with General Statutes § 52-45b, which provides:

"Unless otherwise provided by rule, the forms of legal process for commencement of civil actions may be as follows:

"(1) Summons for appearance before the Superior Court.

"To any proper officer:

"By authority of the state of Connecticut, you are hereby commanded to summon A.B. of . . . (list address or last known address) to appear before the superior court for the judicial district of . . . . on the . . . . Tuesday of . . . . , 20 . . , the appearance not to be in person but to be made by A.B. or his attorney by filing a written statement of appearance with the clerk of the court whose address is . . . . , (include street number and town) on or before the second day following the return date then and there to answer to C.D. of . . . . in a civil action, in which the plaintiff complains and says: . . . .

"I, J.W., the subscribing authority, hereby certify that I have personal knowledge as to the financial responsibility of the plaintiff, and deem it sufficient; or, E.F. of . . . . is recognized in $ . . . . to prosecute, etc.

"Of this writ with your actions thereon make due return.

"Dated at . . . . the . . . . day of . . . . , 20 . .

"J.W., Commissioner of the Superior Court.

"(2) Writ of attachment before the Superior Court.

"To any proper officer:

"By authority of the state of Connecticut, you are hereby commanded to attach to the value of . . . . dollars the real or personal property of A.B.

On December 8, 2008, state marshal Neil Feinberg attested that he had attached all of the right, title and interest of John H. Baxter in 69 Neck Road, Old Lyme. Included on that document is a description of 69 Neck Road and the following further attestation: "and on the 8th day of said December A.D., 2008, I left in said Town Clerk's office in the Town of Old Lyme the original certificate of attachment with my endorsement thereon. And I also on the 8th day of said Dec. 2008 left a like true and attested copy of this application, order, affidavit and writ [of] summons, complaint and entire process, with my endorsement thereon . . . at the usual place of abode of John H. Baxter, 69 Neck Road, Old Lyme, Conn[ecticut], said Defendant . . . ." The return of service was filed with the court on December 11, 2008.

On December 30, 2008, the plaintiff filed a motion for default for failure to appear, and, on January 9, 2009, the defendant's counsel filed an appearance. On January 23, 2009, the plaintiff filed a motion for default for failure to plead, which the clerk granted on February 5, 2009. The defendant filed a motion to open the default, #104, and a motion to discharge attachment, also #104, on February 19, 2009, and he filed a motion to dismiss for lack of subject matter jurisdiction, #105,

of . . . . (list address or last known address) and him summon to appear before the superior court for the judicial district of . . . . on the . . . . Tuesday of . . . . , 20 . . , the appearance not to be in person but to be made by A.B. or his attorney by filing a written statement of appearance with the clerk of the court whose address is . . . . , (including street number and town) on or before the second day following the return date then and there to answer to C.D. of . . . . in a civil action, in which the plaintiff complains and says: . . . .

"I, J.W., the subscribing authority, hereby certify that I have personal knowledge as to the financial responsibility of the plaintiff, and deem it sufficient; or, E.F. of . . . . is recognized in $ . . . . to prosecute, etc.

"Of this writ with your actions thereon make due return.

"Dated at . . . . this . . . . day of . . . . , 20 . .

"J.W., Commissioner of the Superior Court."

at the same time.[4] The defendant asserted in the motions that the writ of summons and complaint were never returned to the court. He further asserted that the only documents properly returned to the court were those for the prejudgment remedy, which contained an October 24, 2008 return day. See footnote 2 of this opinion.

On February 20, 2009, the court sent out a "corrected order" stating that the motion for default for failure to plead was denied because "no return of writ was filed."[5] The defendant alleges, however, that on February 26, 2009, the court sent another notice to the parties, stating that the corrected order was in error and that the default for failure to plead properly had been entered on February 5, 2009.[6] On March 10, 2009, the plaintiff filed a certificate of closed pleadings, claiming a hearing in damages. On March 26, 2009, the defendant again filed a motion to open the default, #109, and a motion to dismiss for lack of subject matter jurisdiction, #110. On April 23, 2009, the plaintiff filed an objection to the motion to dismiss. On May 11, 2009, the court held a hearing on the motion to dismiss and ruled that the marshal properly had made service, that the return day was December 23, 2008,[7] and that the complaint and other documents were returned to the court on December 11, 2008. Accordingly, the court sustained the plaintiff's objection and denied the motion to dismiss.

On May 13, 2009, the plaintiff filed an objection to the defendant's motion to open the default. On May

[4] The case detail sheet lists motion #104 as a motion for order. The February 19, 2009 motion to open the default is not listed on the case detail sheet, nor is the motion to dismiss, #105. The case detail sheet does not have an entry #105.

[5] The defendant has supplied a copy of this order in the appendix to his appellate brief. The order, however, does not appear in the court file, nor is it recorded on the case detail sheet.

[6] There is no record of this order in the court file or on the docket sheet, nor did the defendant provide a copy of this alleged order in his appendix.

[7] December 23, 2008, was a Tuesday. See General Statutes § 52-48; see also footnote 3 of this opinion.

15, 2009, the court ordered the case stricken from the inventory of cases for hearings in damages. On June 9, 2009, the court overruled without prejudice the plaintiff's May 13, 2009 objection to the motion to open the default, stating that it would reconsider the objection if the defendant failed to file his answer, with special defenses or counterclaims, if any, within seven calendar days. The record indicates that the clerk's office sent notice of this decision to the defendant's counsel on June 10, 2009. On July 14, 2009, the plaintiff filed another certificate of closed pleadings, and the court scheduled the matter for a September 9, 2009 hearing in damages.

On September 4, 2009, the defendant filed a motion entitled "Motion to Correct Status of Pleadings, for Rectification of Court File and for Removal from Trial List." He also filed an affidavit in which counsel averred, inter alia, that he had never received notice of the court's June 9, 2009 ruling, in which the court gave the defendant seven days to file his answer. On September 9, 2009, the defendant filed his answer. During the hearing in damages held that day, the defendant argued that the court should set aside the default. In a February 5, 2010 memorandum of decision, the court stated that it would not reconsider the February 5, 2009 default, and it rendered judgment in the amount of $19,376.69, together with costs, in favor of the plaintiff. This appeal followed.

I

On appeal, the defendant claims that the court improperly denied his motion to dismiss for lack of subject matter jurisdiction.[8] The defendant argues: "The process that was served upon [the] defendant was defective in that it failed to establish a return date. It

---

[8] We note that although the defendant did not list this claim in his statement of the issues, he did brief the issue. The plaintiff, however, did not address this issue in its brief.

failed to be returned within [six] days of a return date and it failed to be served at least [twelve] days before a return date. Therefore, the court lacks subject matter jurisdiction over this action." He further argues that "prejudgment remedy documents are insufficient to commence an action. . . . [In this case] [t]he writ of summons and complaint are not sufficient . . . to commence an action." (Citations omitted.) Although the defendant argues that his claim implicates the court's subject matter jurisdiction, we conclude that the defendant's claim implicates the court's personal jurisdiction over the defendant.[9] See *Hillman* v. *Greenwich*, 217

---

[9] "[J]urisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. . . . A defect in process, however, such as an improperly executed writ, implicates personal jurisdiction, rather than subject matter jurisdiction. . . . [W]hen a particular method of serving process is set forth by statute, that method must be followed. . . . Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction. . . . The jurisdiction that is found lacking, however, is jurisdiction over the person, not the subject matter. . . .

"[A]lthough we acknowledge that mandatory language may be an indication that the legislature intended a time requirement to be jurisdictional, such language alone does not overcome the strong presumption of jurisdiction, nor does such language alone prove strong legislative intent to create a jurisdictional bar. . . . [A] conclusion that a time limit is subject matter jurisdictional has very serious and final consequences. It means that, except in very rare circumstances . . . a subject matter jurisdictional defect may not be waived . . . may be raised at any time, even on appeal . . . and that subject matter jurisdiction, if lacking, may not be conferred by the parties, explicitly or implicitly. . . . A challenge to a court's personal jurisdiction, however, is waived if not raised by a motion to dismiss within thirty days of the filing of an appearance. *Pitchell* v. *Hartford*, 247 Conn. 422, 433, 722 A.2d 797 (1999) ([t]he rule specifically and unambiguously provides that any claim of lack of jurisdiction over the person as a result of an insufficiency of service of process is waived unless it is raised by a motion to dismiss filed within thirty days [after the filing of an appearance] . . .); see also Practice Book § 10-32 ([a]ny claim of lack of jurisdiction over the person . . . is waived if not raised by a motion to dismiss). Therefore, we have stated many times that there is a presumption in favor of subject matter jurisdiction, and we require a strong showing of legislative intent that such a time limit is jurisdictional." (Internal quotation marks omitted.) *Merrill*

Conn. 520, 526, 587 A.2d 99 (1991) (failure to comply with statutory prerequisite to commencement of civil action pursuant to General Statutes § 52-45a[10] implicates personal jurisdiction over defendant). Furthermore, we conclude that the defendant, by filing his motion to dismiss more than thirty days after the filing of his appearance, has waived any claim regarding lack of personal jurisdiction in this case. See footnote 9 of this opinion; *Pitchell* v. *Hartford*, 247 Conn. 422, 432–33, 722 A.2d 797 (1999) (claim of lack of jurisdiction over person as result of insufficiency of service of process is waived unless raised by motion to dismiss within thirty days after filing appearance).

## II

The defendant next claims that the court abused its discretion in not opening the default for failure to plead. The defendant argues that "[t]he granting, opening, mislogging of [the] motion to dismiss and regranting of the motion for default, despite the motion to dismiss, has

v. *NRT New England, Inc.*, 126 Conn. App. 314, 319–20, 12 A.3d 575, cert. granted on other grounds, 300 Conn. 925, 15 A.3d 629 (2011).

[10] General Statutes § 52-45a provides: "Civil actions shall be commenced by legal process consisting of a writ of summons or attachment, describing the parties, the court to which it is returnable, the return day, the date and place for the filing of an appearance and information required by the Office of the Chief Court Administrator. The writ shall be accompanied by the plaintiff's complaint. The writ may run into any judicial district and shall be signed by a commissioner of the Superior Court or a judge or clerk of the court to which it is returnable."

General Statutes § 52-46 provides: "Civil process, if returnable to the Supreme Court, shall be served at least thirty days, inclusive, before the day of the sitting of the court, and, if returnable to the Superior Court, at least twelve days, inclusive, before such day."

General Statutes § 52-46a provides: "Process in civil actions returnable to the Supreme Court shall be returned to its clerk at least twenty days before the return day and, if returnable to the Superior Court, except process in summary process actions and petitions for paternity and support, to the clerk of such court at least six days before the return day."

deprived the defendant of his right to plead. It implicates the defendant's due process rights.[11] It also establishes good cause to open the default." The plaintiff argues that the court did not abuse its discretion in declining to open the default because the defendant had failed to file an answer and continued to persist in his erroneous argument that a motion to dismiss was a responsive pleading that required the opening of a default for failure to plead. We agree with the plaintiff.

A motion to open a default for failure to plead is governed by Practice Book §§ 17-32 and 17-42.[12] "The opening of a default when a claim for a hearing in damages has been filed is controlled by Practice Book § 17-42 because that is the rule of practice that addresses the setting aside of a default by the judicial authority. . . . The distinction between whether Practice Book § 17-32 applies or Practice Book § 17-42 applies is whether a claim for a hearing in damages is filed before, or after, a motion to set aside the default is filed." *Snowdon* v. *Grillo*, 114 Conn. App. 131, 138, 968 A.2d 984 (2009).

In this case, the defendant's first motion to open the default for failure to plead was filed on February 19, 2009, before a claim for a hearing in damages had been filed. That default, therefore, pursuant to Practice Book § 17-32, could have been opened by the clerk upon the defendant's filing of an answer to the plaintiff's complaint. The defendant, however, did not file an answer. Accordingly, the default could not be set aside

---

[11] Although stating that this implicates his due process rights, the defendant does not set forth a due process analysis related to this claim.

[12] Practice Book § 17-42 provides: "A motion to set aside a default where no judgment has been rendered may be granted by the judicial authority for good cause shown upon such terms as it may impose. As part of its order, the judicial authority may extend the time for filing pleadings or disclosure in favor of a party who has not been negligent. Certain defaults may be set aside by the clerk pursuant to Sections 17-20 and 17-32."

at that time. The defendant also filed a motion to open the default for failure to plead on March 26, 2009. The plaintiff, however, had filed a claim for a hearing in damages on March 10, 2009, which, pursuant to Practice Book § 17-42, meant that the court, upon good cause shown, had the discretion to grant the motion to open the default for failure to plead. "[T]he determination of whether to set aside [a] default is within the discretion of the trial court . . . and will not be disturbed unless that discretion has been abused or where injustice will result. In the exercise of its discretion, the trial court may consider not only the presence of mistake, accident, inadvertence, misfortune or other reasonable cause . . . factors such as [t]he seriousness of the default, its duration, the reasons for it and the degree of contumacy involved . . . but also, the totality of the circumstances, including whether the delay has caused prejudice to the nondefaulting party." (Citations omitted; internal quotation marks omitted.) *Higgins* v. *Karp*, 243 Conn. 495, 508, 706 A.2d 1 (1998).

After consideration of the defendant's motion to open and the plaintiff's objection thereto, the court, on June 9, 2009, overruled the objection, without prejudice, giving the defendant seven days to file an answer. Again, the defendant did not file an answer.[13] Although the defendant continued to argue to the court that the court did not have jurisdiction because service of process had not been effectuated and returned to the court properly, the court had denied the defendant's motion to dismiss claiming such lack of jurisdiction on May 11, 2009. The defendant did not file an answer to the

---

[13] Our review of the record reveals that the defendant's attorney filed an affidavit with the defendant's September 4, 2009 motion to correct status of pleadings, in which he averred, in part, that he had not received notice of the court's June 9, 2009 order giving him seven days to file an answer. The defendant, however, has not raised an argument concerning this averment or this motion on appeal.

plaintiff's complaint until the day of the hearing in damages, September 9, 2009. The court, at that time, stated that it would not reconsider its earlier ruling. Although the defendant argues that the irregularities in the clerk's office procedure established good cause for opening the default, he does not explain why it was an abuse of discretion for the court to refuse to set aside the default.

Practice Book § 17-42 permits the court to set aside a default "for good cause shown upon such terms as it may impose. . . ." In this case, the court, on June 9, 2009, gave the defendant seven days to file his answer to the plaintiff's complaint, which would have set aside the default previously issued. The defendant, however, failed to comply with that order and did not file his answer for another three months. Reviewing the record in conjunction with the arguments raised on appeal, we conclude that the defendant has failed to establish that the court abused its discretion in this case. The court acted within its discretion in June, 2009, when it gave the defendant seven days to file an answer to a complaint that had a return date of December 23, 2008. Furthermore, the defendant has failed to establish that it was an abuse of discretion for the court to decline to revisit the default during the hearing in damages, which was held on September 9, 2009.

### III

The defendant next claims that "[t]he court improperly curtailed [his] defense as to damages in violation of [his] due process rights." The defendant also argues that he objected to the admission of an affidavit on the issue of the attorney's fees and that the court improperly overruled the objection, thereby precluding him from cross-examining the affiant on the issue of damages.[14]

---

[14] It is not completely clear whether the defendant is arguing specifically about the claim for damages for unpaid legal fees or for the plaintiff's claim for attorney's fees for bringing this action, or both. We note that the defendant briefed separately a claim regarding the court's alleged improper restriction of his right to cross-examine on the issue of attorney's fees. See part IV of this opinion.

We conclude that this claim is briefed inadequately, the entire briefing consisting of only two small paragraphs.

Although setting forth one conclusory statement that the court's actions violated his due process rights, the defendant does not set forth in his appellate brief a due process analysis of this claim, nor does he indicate whether his claim concerns procedural due process, substantive due process or both. See *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 358 n.7, 977 A.2d 636 (2009) (party should indicate and provide separate cases and analysis on procedural due process claim and substantive due process claim). "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 826, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006).[15] Accordingly, we decline to review this claim.

IV

The defendant also claims that the court improperly awarded attorney's fees to the plaintiff in connection with this litigation. He argues that "[t]he court violated the defendant's rights to due process of law, both under the Connecticut and U.S. Constitutions, when it allowed an affidavit for attorney's fees but precluded a cross-examination or challenge to the affidavit by defense counsel." After citing some general law on the right to

---

[15] The Supreme Court in *Carpenter* noted: "The only specific constitutional argument made by the defendant regarding this issue is the summary statement in her brief that [t]he defendant was denied [her] constitutional right to cross-examine [certain witnesses]." *State* v. *Carpenter*, supra, 275 Conn. 827 n.19. Similarly, in the present case, the defendant merely asserts that his due process rights were violated, without citation to authority or any due process analysis.

litigate the reasonableness of attorney's fees, he provides the following, which represents the entire analysis of his claim: "When it errantly allowed an [a]ffidavit for attorney's fees but precluded a cross-examination or challenge not only to the [a]ffidavit but the admission of the [a]ffidavit, the [c]ourt violated the [d]efendant's rights to [d]ue [p]rocess of law. Therefore, such award should be reconsidered, or considered for argument once again." We again conclude that the defendant had failed to provide adequate briefing on this alleged constitutional issue. See part III of this opinion.

Furthermore, we note that the defendant's counsel expressly waived this issue during the hearing on damages when he, initially, told the court that the plaintiff's counsel did not have to testify concerning the affidavit of attorney's fees. The following colloquy occurred:

"[The Plaintiff's Counsel]: I would like to submit an affidavit of my claim for interest and an affidavit for my claim of attorney's fees in this case, based on . . . language in exhibit A [the retainer agreement], if the court should find that I'm entitled to those extra damages based on exhibit A.

"[The Defendant's Counsel]: I have to see them first to see if I have an objection, Your Honor.

"[The Plaintiff's Counsel]: I would ask the court, if the court would take a moment to review my affidavit of attorney's fees. I did approximate one entry on my affidavit, which was approximated that this matter would take one hour this morning and, Judge, in fact, it's taken three hours. So, if the court feels it's appropriate at my normal billing rate of $250 an hour, I would ask the court to, I believe, increase my claimed legal fees of $2100 to $2600, if the court felt that was appropriate.

"[The Defendant's Counsel]: Your Honor, I don't think that he is going to have to testify to it, I think, because,

at this point it's a contested hearing, it's not where you could just throw an affidavit in. I mean, this isn't a default where nobody is here. We're defending this case. And, in terms of his calculations of interest, you know, I guess the court can calculate what it calculates if it wants, but I don't know that it necessarily—

"The Court: All right. Is that it, gentlemen?

"[The Plaintiff's Counsel]: Your Honor, I have rested, and I have nothing further. I would ask that—

"[The Defendant's Counsel]: We would request a continuance for an opportunity to have [the defendant], when he is available, to be able to testify. He may be— it may be short. I think I would like to have the opportunity to put him on.[16]

"The Court: Yes, I understand that.

"[The Defendant's Counsel]: I'm also going to request an opportunity to file a brief. There are some issues that need to be briefed in this case that have come out in this.

"[The Plaintiff's Counsel]: Your Honor, my position is that this is a molehill that is being turned into a mountain. That this is a very simple, straightforward commercial collection matter, and it doesn't require a brief.

"The Court: I will give you two weeks to file your brief, counsel.

"[The Defendant's Counsel]: Okay. Can I have the opportunity to put [the defendant] on?

---

[16] The defendant's attorney, on a previous day, had requested a continuance of the hearing in damages, which had been denied by the court. Earlier during the hearing in damages, counsel again requested that the hearing be continued because the defendant was away on vacation. The court again denied the request.

"The Court: No. [The defendant] had his opportunity. I don't know how long this calendar—and I don't know how long he has been away, wherever he is, he should have been present if he wanted to be heard.

"[The Defendant's Counsel]: I can't have him testify either? I couldn't get a continuance, I couldn't have him testify, we haven't been allowed to file an answer, but the errors that the clerk's office made, they are okay? Okay. Okay. Your Honor, in two weeks, I will file a brief."

Counsel then stated that he now was objecting to the use of an affidavit to prove attorney's fees in the case and that testimony should be required. Specifically, he stated: "I do, for the record, I object to using an affidavit of attorney's fees and an affidavit of interest, too. I think he has to be able to be prepared to testify to that, and you are not requiring him to testify."[17] The court, however, essentially advised him that the hearing was over.

"It is axiomatic that a trial court must [afford] the parties the opportunity to present evidence and to be heard on the issue of reasonable attorney's fees. . . . [A] party seeking attorney's fees must satisfy the undisputed requirement that the reasonableness of attorney's fees and costs . . . be proven by an appropriate evidentiary showing. . . . This protects the opposing party's right to litigate fully the reasonableness of the attorney's fees." (Internal quotation marks omitted.) *Arcano* v. *Board of Education*, 81 Conn. App. 761, 770–71, 841 A.2d 742 (2004). Our Supreme Court, in *Smith* v. *Snyder*, 267 Conn. 456, 479, 839 A.2d 589 (2004), clarified the evidentiary burden required in a claim for

---

[17] The transcript of the hearing incorrectly credits this statement to the plaintiff's attorney. It does appear clear from reading the transcript, however, that it was the defendant's attorney who voiced this objection.

attorney's fees, holding that "the proponent must present to the court at the time of trial . . . a statement of the fees requested and a description of services rendered." The court in *Smith* determined that although the plaintiffs' mere request for attorney's fees was inadequate under this standard, the court would not reverse the award of attorney's fees because opposing counsel did not object to the request. Id., 481. The court concluded that "the defendants, in failing to object to the plaintiffs' request for attorney's fees, effectively acquiesced in that request, and, consequently, they now will not be heard to complain about that request." Id.

In the present case, the record reveals that the plaintiff's counsel provided to the court an affidavit on the issue of attorney's fees. The defendant's attorney initially stated that the plaintiff's attorney did not need to testify on the matter. It was only after the court again denied his request for a continuance that the defendant's counsel voiced any concern about the affidavit or about a desire to cross-examine the plaintiff's attorney. The transcript from the hearing reveals that the hearing in damages had concluded at that point, however, and that the parties merely were wrapping up a briefing schedule. "When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal." *State* v. *Smith*, 289 Conn. 598, 621, 960 A.2d 993 (2008).

V

Finally, the defendant claims that the court failed to protect his right to due process of law. The defendant's brief sets forth the following: "In totality, the failure to 'code' the defendant's pleadings when filed, the entrance, vacation of reentrance of default against the defendant, and the imposition of attorney's fees on the

simple basis of [an] affidavit without allowing the defendant his right and benefit to cross-examine or challenge such imposition, have combined to effect a deprivation of the defendant's right to due process in the above captioned matter." This one sentence, however, sets forth the entire briefing on this alleged constitutional claim by the defendant. The defendant does not explain whether he is claiming a violation of procedural due process or substantive due process. See *Columbia Air Services, Inc.* v. *Dept. of Transportation*, supra, 293 Conn. 358 n.7. There is no citation to authority, no standard of review and no analysis set forth in his brief. Accordingly, we decline to review this claim. See *Knapp* v. *Knapp*, 270 Conn. 815, 823 n.8, 856 A.2d 358 (2004) ("We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." [Internal quotation marks omitted.]).

The judgment is affirmed.

In this opinion the other judges concurred.